## A10A1825. BUTLER v. THE STATE.
(709 SE2d 293)

DOYLE, Judge.

Karan Butler appeals the denial of her plea in bar and motion to dismiss her indictment based on a violation of her right to a speedy trial. We reverse and remand with direction, for reasons that follow.

The record shows that Butler was arrested on May 30, 2007, and charged with several crimes arising out of a May 28, 2007 robbery and shooting of a cab driver. She was indicted on October 4, 2007, and charged with aggravated assault, aggravated battery, two counts of possession of a firearm during the commission of a crime, and possession of marijuana. Butler filed a motion for a bond hearing on October 5, 2007, but the trial court denied the motion, and she has remained in jail since her arrest.

Butler has had at least five separate attorneys since her arrest. Although she was represented by counsel at the time, Butler sent numerous letters to the clerk of court, her attorney, and the trial court, including: (1) a letter dated December 8, 2008, to her attorney (with a copy sent to the clerk of court) requesting a bond and a trial date, and asserting her "right to a speedy trial"; (2) a letter dated December 9, 2008, to the clerk requesting certain evidence; and (3) letters to the trial judge dated (a) January 14, 2009, (b) February 16, 2009, and (c) February 21, 2009.[1] On February 26, 2009, Butler filed a grievance with the State Bar of Georgia against her attorney, who filed a motion to withdraw as counsel on July 2, 2009. Butler's fifth attorney filed an entry of appearance on August 10, 2009, and he filed a motion for bond on December 15, 2009. Following a January 25, 2010 hearing, the trial court denied Butler's motion for bond and specially set a March 1, 2010 trial date. Thereafter, on January 27,

---

[1] The trial court forwarded to Butler's attorney and the assistant district attorney assigned to the case a copy of the February 21, 2009 letter, which detailed her lack of communication with counsel and indicated that she had located a witness who knew that another person committed the alleged crimes.

2010, Butler filed a plea in bar and motion to dismiss the indictment, claiming a violation of her constitutional right to a speedy trial.

At the hearing on the motion, Butler testified that she had appeared in court approximately 40 times between her arrest and the hearing. She wrote multiple letters to her attorney, with copies to the trial court, the State, and the clerk of court, requesting a trial. As of the date of the hearing, she had been in jail for 32 months. According to Butler, she suffered from stress, anguish, and nightmares while in custody, and she was placed on psychiatric medication for depression while in jail. She also had back problems caused by the jail beds, and she suffered from ingrown toenails resulting from jail slippers, which condition required two separate surgeries. Butler further testified that she lost witnesses because of the delay in going to trial, including Ashley Hornick, a fellow inmate who allegedly knew the person who actually committed the crimes Butler was accused of committing; Butler's brother, who was incarcerated in Alabama; and neighbors who would serve as alibi witnesses, including two individuals named "Joelle" and "Black." According to Butler, her ability to locate these witnesses was hampered by the passage of time and her incarceration.

On the second day of the motion hearing, the State produced Ashley Hornick, one of the witnesses that Butler claimed she was unable to locate.[2] The State also presented the testimony of Brittany Bush, Butler's former girlfriend, who initially told police that she did not know anything about the robbery Butler was alleged to have committed. Bush, however, later told police that Butler had admitted that she committed the robbery, and that Butler told her to tell the authorities that someone used their phone on the night of the robbery.[3] Bush further testified that Butler called her repeatedly, several times a day on some occasions, encouraged her not to cooperate with the State, told her "to stick to the story that [they] talked about," and advised her that Bush did not have to speak to the prosecution nor did she have to testify, even if she was subpoenaed to do so.

Following the hearing, the trial court denied Butler's motion to dismiss and plea in bar for the reasons set forth in the transcript attached to the order. The transcript contained the following ruling:

> I'm going to deny the motion. Brittany Bush. If I hadn't heard what I heard from her, then it would be a totally different story here, because I think it would have been

---

[2] Hornick did not testify at the hearing.

[3] Bush later learned that someone placed a call from her telephone to the taxi service that employed the driver, who was the victim in the armed robbery.

negligence on the part of the State and the [c]ourt not to
have this case tried. But I've got her testimony, which I
believe leaves the defendant with unclean hands.

The court also found that until her lawyer filed the motion to
dismiss, the only requests for a speedy trial were asserted by Butler,
which were of "no legal effect" because she was represented by
counsel at the time. Finally, the trial court stated that Butler's
"witness is available. I don't know the full names of the witnesses.
It's speculation about whether these people could testify for her. But
it is a serious — I did have a serious concern about it due to the
length of the delay." Butler appeals the denial of her motion to
dismiss and plea in bar.

The Sixth Amendment guarantees criminal defendants "the
right to a speedy and public trial."[4] This right is "an important
safeguard to prevent undue and oppressive incarceration prior to
trial, to minimize anxiety and concern accompanying public accusa-
tion and to limit the possibilities that long delay will impair the
ability of an accused to defend himself."[5] The two-stage analysis for
deciding constitutional speedy trial claims is set forth in *Barker v.
Wingo*[6] and *Doggett v. United States*.[7]

In the first stage of the analysis, the court must determine
whether the pretrial delay is sufficiently long to be consid-
ered presumptively prejudicial. The pretrial delay is mea-
sured from the accused's arrest, indictment, or other formal
accusation to the trial or, if the accused files a motion to
dismiss the indictment, until the trial court denies the
motion. If the delay has passed the point of presumptive
prejudice, the court must proceed to the second step of the
*Barker-Doggett* analysis, which requires the application of a
delicate, context-sensitive, four-factor balancing test to de-
termine whether the accused has been deprived of the right
to a speedy trial.[8]

On appeal, "we review the trial court's denial of a motion to dismiss
an indictment on speedy trial grounds for abuse of discretion and

---

[4] "The speedy trial right enshrined in the Georgia Constitution is coextensive with the
federal guarantee." *Ruffin v. State*, 284 Ga. 52, 54 (2) (663 SE2d 189) (2008).

[5] *United States v. Ewell*, 383 U. S. 116, 120 (86 SC 773, 15 LE2d 627) (1966).

[6] 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

[7] 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992).

[8] (Citations and punctuation omitted.) *West v. State*, 295 Ga. App. 15, 16 (670 SE2d 833)
(2008).

defer to the trial court's findings of fact and its weighing of disputed facts."[9]

1. *Presumptive prejudice.* The record shows that more than 32 months elapsed from the time of Butler's May 2007 arrest until the trial court's March 2010 order denying her motion to dismiss the indictment. As conceded by the State, this delay is presumptively prejudicial.[10] Accordingly, the *Barker-Doggett* balancing test must be considered.

2. *Barker-Doggett balancing test.*

The balancing test is comprised of the following four factors:

> (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.[11]

(a) *Length of the delay.* This factor requires analysis of "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."[12]

> An uncommon length of the pretrial delay thus merits consideration beyond its use as a liminal screening mechanism. Here, we find nothing in the trial court's order to show that it considered whether the delay before trial was uncommonly long given the circumstances of the case. To the extent the trial court overlooked this factor in the four-factor balancing process, it erred.[13]

The 32-month delay in bringing Butler to trial in this case is excessive, and this factor must be weighed *heavily* against the

---

[9] *Grizzard v. State*, 301 Ga. App. 613, 614 (688 SE2d 402) (2009).

[10] See *Meder v. State*, 305 Ga. App. 702 (a) (700 SE2d 706) (2010) (" 'any delay approaching a year raises a threshold presumption of prejudice' ").

[11] (Punctuation and footnote omitted) *Simmons v. State*, 304 Ga. App. 39, 40-41 (2) (696 SE2d 75) (2010).

[12] *Doggett*, 505 U. S. at 652 (II).

[13] (Citation and punctuation omitted.) *Teasley v. State*, 307 Ga. App. 153, 158 (2) (a) (704 SE2d 248) (2010).

State.[14]

(b) *Reasons for the delay*. The trial court's order makes no specific findings regarding the reasons for the delay in this case. The court does, however, note that Brittany Bush's testimony "leaves the defendant with unclean hands," and that without her testimony, "it would have been negligence on the part of the State and the [c]ourt not to have this case tried."

To the extent that the trial court ruled that Butler's communications with Bush delayed the trial such that this factor should be weighed against Butler, such ruling is erroneous.[15] As Bush testified, the State subpoenaed her for the speedy trial hearing, and she appeared and testified at the hearing, including stating that Butler had admitted committing the robbery. The State never subpoenaed her before then, and there was no evidence that the prosecution tried to locate Bush and was unable to do so. Even if Bush had been unwilling to testify against Butler, however, her lack of cooperation would not have provided a reasonable basis to delay the trial for almost three years; to hold otherwise would be to effectively condone excessive pretrial incarceration of Butler unless and until Bush agreed to testify against her.

The State failed to offer any other explanation whatsoever for the delay in bringing Butler to trial. "Where no reason appears for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial."[16] Even unintentional delays must "be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."[17]

> [A]s explained by the United States Supreme Court, the weight we assign to official negligence compounds over time thus, our toleration of such negligence varies inversely with its protractedness. Persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Govern-

---

[14] See *Perry v. Mitchell*, 253 Ga. 593, 594 (322 SE2d 273) (1984), overruled in part on other grounds, *Character v. State*, 285 Ga. 112, 116 (2) (674 SE2d 280) (2009) (delay of more than two years is "deplorable"); *Teasley*, 307 Ga. App. at 158 (2) (a); *State v. Ivory*, 304 Ga. App. 859, 862 (2) (a) (698 SE2d 340) (2010).

[15] As Butler argues on appeal, the principle of unclean hands is an equitable doctrine. See *Park v. Fortune Partner, Inc.*, 279 Ga. App. 268, 273-274 (6) (630 SE2d 871) (2006). And as set forth in OCGA § 9-5-2, "[e]quity will take no part in the administration of the criminal law. It will neither aid criminal courts in the exercise of their jurisdiction, nor will it restrain or obstruct them." Thus, to the extent that the trial court found that Butler's unclean hands alone precluded her right to a speedy trial, it erred.

[16] (Punctuation omitted.) *Brannen v. State*, 274 Ga. 454, 455 (553 SE2d 813) (2001).

[17] (Punctuation omitted.) *Strunk v. United States*, 412 U. S. 434, 436 (I) (93 SC 2260, 37 LE2d 56) (1973).

ment attaches to securing a conviction, the harder it will try to get it.[18]

Nevertheless, not all "government negligence in failing to prosecute must be viewed as benign, and therefore entitled to only de minimis weight against the government."[19]

> Our cases reflect that negligence is entitled to minimal weight against the State only where it results either from the prosecution's inadvertent neglect of the case or from solely administrative factors over which the prosecution has no control, such as overcrowded court dockets or under-staffed law enforcement agencies.[20]

Here, given the complete lack of an explanation for the uncommonly long delay and the fact that Butler wrote multiple letters to the State (or sent copies of letters to the State) asserting her right to a speedy trial, we cannot conclude that the State's neglect was inadvertent or that the delay was beyond the control of the prosecution. Thus, the trial court should have weighed this factor against the State, and to the extent it failed to do so, it erred.[21]

(c) *The defendant's assertion of her right to a speedy trial.* "Because a defendant may benefit by delaying a trial, this Court has recognized that a defendant has a responsibility to assert h[er] right to a speedy trial."[22] "In order to invoke the right, the accused need not file a formal motion, though that is certainly sufficient."[23] "The relevant question for the purposes of the third *Barker-Doggett* factor is whether the accused has asserted the right to a speedy trial 'in due course.' "[24]

Here, Butler wrote multiple letters to her counsel, the clerk of court, the trial court, and the State requesting a trial date, beginning in December 2008. But

> this Court has repeatedly held that a pro se demand for a speedy trial filed while a criminal defendant is represented by counsel was of no legal effect whatsoever. The Sixth

---

[18] (Citations and punctuation omitted.) *Teasley*, 307 Ga. App. at 159-160 (2) (b), citing *Ruffin*, 284 Ga. at 61 (2) (b) (ii).

[19] (Punctuation omitted.) *Ditman v. State*, 301 Ga. App. 187, 193 (2) (b) (687 SE2d 155) (2009).

[20] (Punctuation omitted). Id.

[21] See id.

[22] (Punctuation omitted.) *Hester v. State*, 268 Ga. App. 94, 98 (3) (601 SE2d 456) (2004).

[23] *Ruffin*, 284 Ga. at 62-63 (2) (b) (iii).

[24] Id. at 63 (2) (b) (iii).

Amendment right does not afford the defendant the hybrid right to simultaneously represent [herself] and be represented by counsel.[25]

Thus, Butler's pro se letters "do not constitute a viable demand for a speedy trial."[26] Instead, Butler's first viable demand for a speedy trial was asserted in January 2010 by counsel in a motion to dismiss filed almost three years after her arrest, and this delay in asserting her constitutional right to a speedy trial should have been weighed against her, though not heavily.[27]

(d) *Prejudice to the defendant*. Again, it is not entirely clear from the trial court's order[28] whether it weighed this factor against Butler or the State.[29] Based on our review of the record, the prejudice factor weighs against the State.

In analyzing this factor, we consider "three interests which the right to a speedy trial protects: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the defendant; and (3) limiting the possibility that the defense will be impaired."[30]

"[C]onsideration of prejudice is not limited to the specifically demonstrable, and affirmative proof of particularized prejudice is not essential to every speedy trial claim. Rather, whether a defendant needs to show particularized prejudice depends upon an evaluation of the first three factors in the balancing test, and whether those factors weigh against the government. The central holding of *Doggett* was that when there is a significant delay (the first factor), caused by the government (the second factor), then the resulting presumption of prejudice, albeit unspecified, if neither extenu-

---

[25] (Punctuation omitted.) *Ditman*, 301 Ga. App. at 194 (2) (c).

[26] Id.

[27] See id.; *Hester*, 268 Ga. App. at 99 (3) (defendant's delay in asserting her right to a speedy trial was weighed against her, though not heavily, because a defendant is not required to file a speedy trial demand as a prerequisite for a plea in bar and because counsel filed a demand within months of being appointed).

[28] The trial court's sole comment regarding prejudice is as follows: "And her witness is available. It's speculation about whether those people could testify for her. But it is a serious — I did have a serious concern about it due to the length of the delay."

[29] We note that the Supreme Court of Georgia recently vacated the judgment and remanded a case for proper findings in accordance with *Barker* because "the trial court's order [was] insufficient to allow [the Court] to determine whether the trial court abused its discretion" by denying the defendant's motion to dismiss his indictment for violation of his constitutional rights to a speedy trial. *Higgenbottom v. State*, 288 Ga. 429 (704 SE2d 786) (2011). Because the transcript of the trial court's verbal ruling, which was incorporated into the order, gives some indication of the trial court's findings, we need not vacate the judgment and remand this case.

[30] *Kramer v. State*, 287 Ga. App. 796, 799 (652 SE2d 843) (2007).

ated, as by the defendant's acquiescence (the third factor), nor persuasively rebutted by the State, entitles the defendant to relief.[31]

Here, the 32-month "delay in this case falls [more than two years] shy of the five years we have previously held gives rise to a presumption of actual prejudice."[32] As we have previously held,

> the *Barker-Doggett* analysis is a balancing test, however, requiring the trial court to analyze each case based upon its own unique facts, it necessarily forbids the application of any "bright-line" rules. Thus, the fact that the delay in this case was less than five years does not automatically foreclose a presumption of actual prejudice. *Rather, in determining whether a pre-trial delay gives rise to a presumption of actual prejudice, the trial court must examine the delay relative to all other factors, including the complexity of the case and the evidence existing on the date the State initiated the prosecution.* In short, the extent to which a defendant must prove prejudice from a delay in prosecution is directly related to the government's reasonableness in its pursuit of that defendant.[33]

In the instant case, the underlying crime was the armed robbery and shooting of a taxi driver. The State does not argue that the case is complex, and our review of the record does not lead us to conclude that the trial would be "complicated or prolonged."[34] Despite the uncomplicated nature of the case, the State permitted it to languish, for no discernible reason, for the 32 months preceding the motion to dismiss filed by Butler's counsel. And we cannot conclude that the delay was inadvertent, given that Butler sent repeated letters to the prosecution and the court requesting a trial. Thus, although the delay alone did not result in a *presumption* of actual prejudice to Butler, we conclude that the 32-month delay coupled with the other factors set forth above could support such a finding.[35]

In addition to arguing that prejudice is presumed, Butler also

---

[31] (Citations and punctuation omitted.) *Hayes v. State*, 298 Ga. App. 338, 347 (2) (d) (680 SE2d 182) (2009).

[32] Id. at 348 (2) (d), citing *Moore v. State*, 294 Ga. App. 570, 574 (1) (d) (669 SE2d 498) (2008) (the "category of cases that presumes actual prejudice . . . generally includes only those cases where the delay is five years or longer.").

[33] (Punctuation omitted; emphasis supplied.) Id. at 348-349 (2) (d). See also *State v. Moses*, 301 Ga. App. 315, 321-322 (2) (d) (692 SE2d 1) (2009).

[34] *Moses*, 301 Ga. App. at 322 (2) (d).

[35] See id. (48-month delay, combined with lack of complexity of the case, could support a

argues that the delay was prejudicial based on her three-year pretrial incarceration and her physical and mental ailments, including depression, anxiety, and toe and back problems while in custody. Generally, in the absence of evidence that a defendant "has been subjected to substandard conditions in the county jail where [s]he has been housed," a defendant cannot sufficiently demonstrate that her pretrial incarceration was oppressive.[36] Here, however, Butler also presented evidence that since her arrest, she suffered from depression, anxiety, and nightmares, for which she was placed on two separate medications, and she had toe and back problems while in custody. And while generally the fact that a defendant "never filed a demand for a speedy trial suggests that [she] was not suffering anxiety or stress from the delay, at least not such anxiety that [s]he wanted to get the trial over with,"[37] Butler made repeated attempts to get her counsel and/or the trial court to schedule the trial. Although her attempts were ultimately of no legal import because she was represented by counsel at the time, they do suggest that she was attempting to alleviate her stress and anxiety and in no way acquiesced to the delay.

"[T]he presumption of prejudice addressed in *Barker* strengthens with the passage of time and, as the delay increases, less specific harm need be demonstrated to conclude that the delay is prejudicial."[38] Guided by this principle and given the circumstances of this case, we conclude that the trial court should have weighed the prejudice factor against the State, and to the extent that it failed to do so, it erred.

3. *Balancing of the four factors.* The trial court made at least one legal error when considering Butler's motion to dismiss and plea in bar. "Although we review the trial court's decision for abuse of discretion, the deference we owe to the trial court is diminished when that court's decision is based on clearly erroneous factual findings or errors of law."[39] Applying the *Barker-Doggett* analysis, we conclude that the length of the delay, the blame for the delay, and the prejudice to the defendant weigh against the State. Butler's failure to assert her right to a speedy trial weighs against her. Accordingly,

presumption of actual prejudice); *Hayes*, 298 Ga. App. at 349-350 (2) (d) (54-month delay, combined with "the relatively uncomplicated nature of this case, the fact that the government's investigation was complete at the time of [the defendant's] original indictment, and the fact that the delay resulted from the State's deliberate conduct," . . . raised a presumption of actual prejudice . . . that the State failed to rebut") (punctuation omitted).

[36] *Weis v. State*, 287 Ga. 46, 54 (1) (d) (694 SE2d 350) (2010).

[37] (Citation and punctuation omitted.) *Allen v. State*, 268 Ga. App. 161, 163 (4) (601 SE2d 485) (2004).

[38] *State v. Redding*, 274 Ga. 831, 834 (561 SE2d 79) (2002). See also *Doggett*, 505 U. S. at 657 (III) (B); *Boseman*, 263 Ga. at 734 (1) (d).

[39] *Teasley*, 307 Ga. App. at 163 (2) (e).

we conclude that the trial court abused its discretion by denying Butler's motion for dismissal and plea in bar.[40]

"The only possible remedy for a violation of the constitutional right to a speedy trial is dismissal of the indictment with prejudice. Accordingly, this case is remanded with direction to enter a discharge and acquittal in favor of [Butler]."[41]

*Judgment reversed and case remanded with direction. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 17, 2011 —
RECONSIDERATION DENIED MARCH 31, 2011 — 

*Sparticus D. Heyward*, for appellant.

*Patrick H. Head, District Attorney, Dana J. Norman, Albert T. Reeves, Anna G. Cross, John R. Edwards, Amelia G. Pray, Assistant District Attorneys*, for appellee.

---

[40] See id.; *Ditman*, 301 Ga. App. at 196-197 (2) (e); *Hayes*, 298 Ga. App. at 350 (2) (d).
[41] (Citation and punctuation omitted.) *Teasley*, 307 Ga. App. at 163 (2) (e).
[1] OCGA § 16-12-100.2 (d) (1).
[2] OCGA §§ 16-4-1; 16-6-4 (c).
[3] OCGA §§ 16-4-1; 16-6-4 (a).